902 F.2d 1578
 Unpublished Disposition
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 
 Cathy FINLEY, individually, and as parent and natural
guardian of Kelly Finley and Roger Finley,
Plaintiffs-Appellants,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human
Services, Defendant-Appellee.
 No. 89-35264.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 7, 1990.
Decided May 10, 1990.
 Before EUGENE A. WRIGHT, REINHARDT and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. Introduction
 
 2
 Appellant, Cathy Finley, wife of the decedent wage earner, Roger D. Finley, appeals the district court's grant of summary judgment to the Secretary in her challenge to the Secretary's decision under 42 U.S.C. Sec. 405(g) (1974). Cathy claims that her deceased husband is not the father of Trisha Elaine Finley, despite the fact that he had signed an acknowledgment of paternity. Therefore, Cathy claims that Trisha is not entitled to surviving child's insurance benefits. The Administrative Law Judge (ALJ) held that Cathy did not rebut the presumption of Roger's paternity created by his signed acknowledgment and that Trisha was therefore entitled to surviving child's benefits. The district court granted summary judgment in favor of the Secretary, finding substantial evidence to support the ALJ's decision. The district court also denied Cathy's request for a remand finding that no material evidence had been presented to warrant a remand. She appeals. We affirm.
 
 II. Jurisdiction
 
 3
 The United States District Court had jurisdiction over this action pursuant to 42 U.S.C. Sec. 405(g). This court has appellate jurisdiction under 28 U.S.C. Sec. 1291 because the United States District Court granted summary judgment to the Secretary which is a final and appealable judgment under Fed.R.Civ.P. 54(a). The Appellant's appeal is timely under Rule 4(a)(1) of the Federal Rules of Appellate Procedure.
 
 III. Standards of Review
 
 4
 The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. Sec. 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). The ALJ is entitled to draw inferences logically flowing from the evidence, Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir.1982), and where the evidence as a whole can support either outcome, the court may not substitute its judgment for the ALJ's. Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir.1985).
 
 
 5
 The standard of review for the issue of remand is whether the new evidence is material and whether good cause exists for the claimant's failure to present the evidence at the administrative hearing. Cotton v. Bowen, 799 F.2d 1403, 1409 (9th Cir.1986). These questions are reviewed de novo as a question of law by this court. Id.
 
 IV. Facts
 
 6
 On September 1, 1972, Trisha Elaine Finley was born to Trudy Tonasket (then Trudy Jerrod). On January 4, 1973, Roger D. Finley signed an acknowledgment of paternity and Trisha's birth certificate was changed to list him as Trisha's father. Despite this acknowledgment of paternity, Roger Finley and Trudy Tonasket never married.
 
 
 7
 On January 13, 1975, Roger and Cathy Finley were married. During this marriage the couple had two children, Roger L. Finley and Kelly L. Finley.
 
 
 8
 On September 22, 1978, Roger, an insured worker for Social Security Act (42 U.S.C. Sec. 301 et seq.) purposes, died. Pursuant to Section 402(d)(1) of the Social Security Act, Cathy filed for mother's benefits for herself and surviving child's benefits for her two children. They each received a one-third share ($354.80) of the maximum amount of benefits ($1,064.20) payable monthly under Roger's account as beneficiaries.
 
 
 9
 Trudy Tonasket applied for child's insurance benefits for Trisha, claiming that Trisha is entitled to be a beneficiary of Roger's account. On August 16, 1979, the Social Security Administration granted this claim. As a result, the amount of benefits from Roger's account was to be apportioned among four beneficiaries, thus reducing the amount Cathy Finley and her children received to $266.10 each. Cathy disputed Trisha's entitlement to benefits.
 
 
 10
 The ALJ issued a decision on February 27, 1985, and found that Trisha was entitled to surviving child's benefits. The Appeals Council declined to review his decision and plaintiff appealed to the district court. On February 6, 1989, the district court granted summary judgment to the Secretary.
 
 
 11
 During the proceedings before the ALJ, Cathy introduced the results of a Human Leukocyte Antigen (HLA) blood test in an effort to prove that a man named Henry Pakootas is the father of Trisha. The evidence showed that Roger was only one of four men who had sexual relations with Trudy Tonasket during the time period that the conception of Trisha Elaine Finley occurred. The other three were Lanny Boyd, Randy Finley (the deceased's brother) and Henry Pakootas. These tests excluded Lanny Boyd and Randy Finley as potential fathers of Trisha. The HLA test established to a 99.77 percent probability that Henry Pakootas was the father of Trisha. However, the district court agreed with the ALJ's finding that the HLA test has been recognized in Washington only to conclusively exclude paternity, but not to conclusively establish paternity. Since it was impossible to obtain a blood sample from the deceased, the district court found that the plaintiff had failed to rebut a presumption of paternity that was raised when Roger signed the acknowledgment of paternity. As a result, the district court held that there existed substantial evidence to support the ALJ's finding that Randy could not be excluded as Trisha's father.
 
 
 12
 The district judge also found that an affidavit signed by Henry Pakootas did not meet the standards for material evidence because it failed to add anything to the record. He denied Cathy's request for remand to the ALJ. Cathy now appeals.
 
 V. Analysis
 
 13
 Under 42 U.S.C. Sec. 416(h)(2)(A), a person is defined as a "child" entitled to insurance benefits under the Social Security Act if he or she is entitled to inherit from the deceased wage earner under the intestate law of the state in which the deceased was domiciled at death. At the time of his death, Roger was domiciled in Washington, therefore, Washington law determines Trisha's eligibility for child's benefits under 42 U.S.C. Sec. 416(h)(2)(A).
 
 
 14
 The intestate law of Washington provides that the net estate of a person dying intestate shall descend and be distributed, "To the issue of the intestate; if they are all in the same degree of kinship to the intestate, they shall take equally, or if of unequal degree, then those of more remote degree shall take by representation." Wash.Rev.Code Sec. 11.04.015(2)(a) (1986). This section applies to the shares for heirs other than the decedent's spouse.
 
 
 15
 The marital status of a child's parents is irrelevant and a child's inheritance is not dependent on his or her legitimacy. Wash.Rev.Code Sec. 11.04.081 (1986) states: "For the purposes of inheritance to, through, and from any child, the effects and treatment of the parent-child relationship shall not depend upon whether or not the parents have been married." Wash.Rev.Code Sec. 26.26.020 further provides: "The parent and child relationship extends equally to every child and to every parent, regardless of the marital status of the parents."
 
 
 16
 Washington also adopted the Uniform Parentage Act in 1976; and under this Act a man is presumed to be the natural father of a child if: "He acknowledges his paternity of the child in a writing filed with the registrar of vital statistics, who shall promptly inform the mother of the filing of the acknowledgment, and she does not dispute the acknowledgment within a reasonable time after being informed thereof, in a writing filed with the registrar of vital statistics." Wash.Rev.Code Sec. 26.26.040(5).
 
 
 17
 Roger signed and filed a statement acknowledging paternity of Trisha in 1973. Trisha's birth certificate was subsequently changed to list Roger as the father with Trudy's consent. A presumption of paternity has therefore been established under Wash.Rev.Code Sec. 26.26.040(5) (1986).
 
 
 18
 A. Failure to Rebut the Presumption of Paternity
 
 
 19
 The Uniform Parentage Act adopted by Washington requires "clear, cogent, and convincing" evidence to overcome a presumption of paternity. Wash.Rev.Code Sec. 26.26.040. This evidence must be "so strong and irresistible that no other conclusion can reasonably be made." Stone v. Stone, 76 Wash.2d 586, 458 P.2d 182 (Wash.1969); In re Marriage of Hardt, 39 Wash.App. 493, 693 P.2d 1386 (Wash.Ct.App.1985); Ripplinger v. Ripplinger, 9 Wash.App. 166, 511 P.2d 82 (Wash.Ct.App.1973).
 
 
 20
 To rebut the presumption of paternity Cathy primarily relies upon the HLA blood test of Henry Pakootas that states a probability of 99.77 percent that Pakootas is the father of Trisha. Cathy argues that this HLA test result meets the "clear, cogent, and convincing" standard.
 
 
 21
 The ALJ found that the HLA test result was insufficient to rebut the presumption of paternity because the HLA test is not conclusive in establishing paternity. The ALJ based its findings on the fact that the scientific community has recognized the reliability of the HLA test to exclude paternity, but not to establish paternity. Since it was impossible to obtain a blood test from Roger, he could not be excluded as Trisha's father. Washington courts have followed this reasoning as HLA blood tests have been used to conclusively exclude paternity but not to conclusively establish paternity. See In re Marriage of Hardt, 39 Wash.App. 493, 693 P.2d 1386, 1389 (Wash.Ct.App.1985) ("Here the blood tests indicated conclusively Mr. Hardt was not the father ..."); In re Marriage of Dombrowski, 41 Wash.App. 753, 705 P.2d 1218, 1220 (Wash.Ct.App.1985) ("[T]he court ordered blood tests, which proved Dombrowski was not Audrey's natural father ... The presumption of paternity ... was rebutted by the blood test.") In fact, Washington courts have stated that HLA tests can only establish a statistical probability that a man is a child's father. State v. James, 388 Wash.App. 264, 686 P.2d 1097 (Wash.Ct.App.1984); State v. Hendrickson, 46 Wash.App. 184, 730 P.2d 88 (Wash.Ct.App.1986).
 
 
 22
 Moreover, the record showed that Roger had formally acknowledged that he was Trisha's father and in doing so fully complied with the provisions of the applicable Washington law. It also showed that he had never repudiated or renounced the statement, nor did anything else that casts doubt on its validity. Finally, of course, the evidence showed that Roger and Trudy had sexual intercourse during the period in which Trisha was conceived.
 
 
 23
 We, therefore, find that the Secretary's decision was based on substantial evidence.
 
 
 24
 B. The Secretary Did Not Err In Failing To Remand This Case
 
 
 25
 The Social Security Act requires the court to remand for consideration of additional evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. Sec. 405(g); Key, 754 F.2d at 1551. To be material, the new evidence must be directly and substantially on the matter in issue. Id. Also, there must be a reasonable possibility that the new evidence would have changed the outcome if it had been before the Secretary. Booz v. Secretary of Health and Human Serv., 734 F.2d 1378, 1380-81 (9th Cir.1984).
 
 
 26
 The affidavit of Henry Pakootas does not meet the remand standard. The affidavit does not justify a remand because it does not substantially modify the evidence already presented and is therefore not material. The affidavit of Henry Pakootas contains his belief that he is Trisha's father because he had sexual relations with Trudy Tonasket during the period of Trisha's conception. There is no factual basis set forth for that speculation, other than the statement that Henry had intercourse with Trudy. However, Trudy has already acknowledged in the record that she had sexual intercourse with four men (including Henry Pakootas) during the period of Trisha's conception. The affidavit also contains Henry Pakootas' speculation on Roger's motivations that led to Roger acknowledging Trisha's paternity. This speculation as to Roger's state of mind does not add anything to the evidence already presented in the record and was properly disregarded. We conclude that there is no reasonable possibility that the outcome would have been different had Henry's affidavit been before the Secretary.
 
 VI. Conclusion
 
 27
 Accordingly, in view of the standards articulated under Washington law and the position that the Washington courts have taken with respect to the application of HLA tests to establish paternity, the District Court's grant of summary judgment to the Secretary was proper; the Secretary's holding was based on substantial evidence.
 
 
 28
 Moreover, the District Court properly denied Appellant's request for a remand because Appellant failed to present any material evidence to warrant a remand.
 
 
 29
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3