[No. 26267-0-I.   Division One.   January 11, 1993.]

*In the Matter of the Marriage of* T.[†]

---

[†]This file has been sealed. Accordingly, the parties' names will not be used.

*John S. Mills,* for appellant.

*Pamela D.O. Larson* and *Law Offices of Pamela D.O. Larson,* for respondent.

*Ralph W. Moldauer,* for minor.

AGID, J. — Mr. T appeals the trial court's denial of his request for attorney fees relating to a paternity action initiated by Mrs. T in connection with the dissolution of their marriage. He also asks this court to review two of the trial court's rulings in that paternity action.

Mr. and Mrs. T were married on October 27, 1986. Mrs. T was pregnant at the time of their marriage and their child, B, was born on June 1, 1987. Mr. and Mrs. T separated in May 1988. In June, Mrs. T filed a petition for dissolution in which she declared for the first time that B was not the natural child of Mr. T. Mrs. T then filed a motion requesting that Mr. T be ordered to take a blood test to establish that he was not B's father. Based on the recommendation of the guardian ad litem, the court refused to grant the order until after the putative father had been tested. The court reasoned that it was not in B's best interest to eliminate Mr. T as the father before establishing paternity in any other individual.

Mrs. T thereupon filed an amended petition alleging that B's natural father was Mr. G, a man with whom she had been involved prior to her marriage while she was also dating Mr. T. Mr. G denied the claim and insisted that he had not had sexual relations with Mrs. T during the relevant period. Mr. G has not had any contact with B and wants none even if he is B's biological father. Mrs. T nevertheless filed a motion for an order requiring Mr. G to take a blood test.

Mr. T, B's presumptive father, has resisted Mrs. T's efforts to disestablish his paternity from the beginning.[1] He joined

---

[1] RCW 26.26.040(1)(a) provides that a man is presumed to be a child's natural father if: "He and the child's natural mother are or have been married to each other and the child is born during the marriage . . .." RCW 26.26.040(2) provides that this presumption is rebutted by a court decree establishing paternity of the child by another man by clear, cogent, and convincing evidence. A blood test which conclusively demonstrates nonpaternity is clear, cogent, and convincing evidence. *See In re Dombrowski,* 41 Wn. App. 753, 756, 705 P.2d 1218 (1985); *In*

Mr. G in contesting Mrs. T's motion for an order requiring Mr. G to take a blood test and requested a full evidentiary hearing prior to the issuance of that order. The court denied the request for a full evidentiary hearing and granted the order. Mr. T's motion to dismiss the paternity claims as time barred was also denied. Mr. G filed an interlocutory appeal challenging both the order requiring him to take a blood test and the trial court's denial of Mr. T's motion to dismiss the paternity action as time barred. Mr. T joined in that appeal by filing a motion for discretionary review, which was denied. Mr. G subsequently withdrew his appeal and complied with the court's order requiring him to submit to a blood test.

The case was subsequently bifurcated to permit resolution of the paternity question prior to consideration of the remaining issues in the dissolution. In accordance with the recommendation of the guardian ad litem, Judge Pro Tempore Paul Seligmann granted a pretrial motion to dismiss the paternity claim as contrary to B's best interests. The remaining issues were resolved following trial before Judge Joan DuBuque. Judge DuBuque declined to award attorney fees to either party and ordered that Mrs. T pay certain fees and costs of the guardian ad litem. This appeal followed.

I

Mr. T first contends that the trial court erred in concluding that RCW 26.09.140 provided the only basis on which attorney fees could be granted and in failing to consider RCW 26.26.140 as a basis for an attorney fee award.[2] RCW 26.09.140 provides in pertinent part:

---

re Marriage of Hardt, 39 Wn. App. 493, 498, 693 P.2d 1386 (1985). Such a determination may not, however, be in the child's best interests. McDaniels v. Carlson, 108 Wn.2d 299, 310, 738 P.2d 254 (1987).

[2]The court's findings with respect to attorney fees were as follows:

"There should be no award of attorney fees between [Mr. G] and [Mrs. T] under RCW 26.26.140.

"There should be no award of attorney fees between [Mrs. T] and [Mr. T] because they have similar abilities to pay.

"The Guardian Ad Litem's fees shall be paid as follows: the evaluation expenses shall be paid by [Mrs. T] as a result of a prior court order and the Guardian Ad Litem expenses will be split 50/50."

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorney's fees or other professional fees in connection therewith . . ..

An award of attorney fees under RCW 26.09.140 is reviewable only for abuse of the trial court's discretion. *In re Marriage of Nelson*, 62 Wn. App. 515, 521, 814 P.2d 1208 (1991).

By contrast, RCW 26.26.140 provides in part:

> The court may order reasonable fees of experts and the child's guardian ad litem, and other costs of the action, including blood test costs, to be paid by the parties in proportions and at times determined by the court. The court may order that all or a portion of a party's reasonable attorney's fees be paid by another party . . ..

The language of this provision indicates that its application, too, is left to the discretion of the trial court. Because RCW 26.26.140 does not contain the language "after considering the financial resources of both parties" as RCW 26.09.140 does, the paternity statute does not require consideration of need or ability to pay in making an award. *See In re Marriage of Hunter*, 52 Wn. App. 265, 274 n.5, 758 P.2d 1019 (1988) (distinguishing RCW 26.18.160 from RCW 26.09.140 on the ground that it does not require an award of attorney fees be based upon a showing of one party's need or the other's ability to pay), *review denied*, 112 Wn.2d 1006 (1989).

In this case, RCW 26.09.140 does not provide the only basis on which fees may be granted. RCW 26.09.140 applies only to proceedings under RCW 26.09. *Hunter*, 52 Wn. App. at 273 n.4. While RCW 26.09 governs matters such as child custody, visitation and support that arise after paternity has been established, issues related to paternity itself are addressed by RCW 26.26. It is a basic rule of statutory construction that a specific provision controls over one that is general in nature. *Miller v. Sybouts*, 97 Wn.2d 445, 448, 645 P.2d 1082 (1982). Thus, the availability of an award of that portion of the attorney fees incurred in connection with the

paternity action should have been considered under RCW 26.26.140. This includes attorney fees incurred by the presumptive father in protecting his rights under RCW 26.26, which were also affected by the paternity action. The question of whether such an award was appropriate is still, of course, within the trial court's discretion. However, as the prevailing party in the paternity action, the presumptive father was at least entitled to have his request for attorney fees under RCW 26.26.140 considered.

The trial court apparently assumed that the question of whether attorney fees should be awarded under RCW 26.26-.140 would be resolved in the paternity proceeding. However, at the conclusion of the paternity proceeding, Judge Seligmann awarded no attorney fees and reserved all such issues for the trial court. Because no decision was made on the issue, the question of whether Mr. T should be awarded attorney fees under RCW 26.26.140 and the amount of any such fees is remanded to the trial court for determination.

## II

■ ■ Mr. T next argues that the trial court erred by issuing an order requiring the putative father to submit to a blood test without first conducting a full evidentiary hearing. Before deciding that issue, however, we must determine whether a presumptive father has standing to challenge such an order. A person has standing to challenge a court order or other court action if his or her protectable interest is adversely affected thereby. *Vovos v. Grant*, 87 Wn.2d 697, 699, 555 P.2d 1343 (1976); *Paris Am. Corp. v. McCausland*, 52 Wn. App. 434, 438, 759 P.2d 1210 (1988) (a party has standing to raise an issue if that party has a distinct and personal interest in the issue), *review denied*, 111 Wn.2d 1034 (1989). The interest must be more, however, than simply the abstract interest of the general public in having others comply with the law. *Vovos*, 87 Wn.2d at 699. Mr. T argues that he has standing to raise this issue because the order constituted a challenge to his presumptive paternity

against which he was consequently obligated to defend. The putative father is clearly the party with the most direct interest in challenging the court's order. However, because Mr. T's interest is more than simply a general interest in having others comply with the law and because the paternity determination is a distinct and personal interest of the presumptive father in the outcome of the case, we conclude that Mr. T has standing to challenge the trial court's order.

█ The question remains, however, whether the underlying issue is moot. An issue is moot if a court can no longer provide effective relief and if the issue presented is purely academic. *Yacobellis v. Bellingham*, 55 Wn. App. 706, 709, 780 P.2d 272 (1989), *review denied*, 114 Wn.2d 1002 (1990). While appellate courts normally will not decide a moot issue, the court may consider the issue if it is one of substantial public importance and is capable of evading review. *DeFunis v. Odegaard*, 84 Wn.2d 617, 627-28, 529 P.2d 438 (1974). Mr. G has already submitted to the blood test which was ordered and the paternity claims were ultimately dismissed. Because this court therefore cannot provide effective relief, the question is moot. Nevertheless, the issue is also one of substantial public importance implicating the due process rights of the presumptive father and the child. Consequently, we shall address the due process issue.

█ █ The type of hearing required under due process principles depends on consideration of three factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and (3) the governmental interest in the matter. *Mathews v. Eldridge*, 424 U.S. 319, 321, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). While we held in *State ex rel. McGuire v. Howe*, 44 Wn. App. 559, 567, 723 P.2d 452, *review denied*, 107 Wn.2d 1014 (1986) that a full evidentiary hearing is not required before a court may enter an order requiring a putative father to submit to blood tests, the circumstances of the instant case are distinguishable from

those in *Howe* in several significant respects. First, in *Howe*, there was no presumptive father actively seeking to preserve his relationship with his child and eager to pay child support. Thus, only the putative father's right to privacy was affected by the order compelling a blood test. Here, however, it is not just the putative father's rights that are impacted by the trial court's ordering a blood test. Rather, the presumptive father's rights and his interest in continuing to parent his child are also affected by the trial court's order. The presence of a presumptive father willing to assume all his parental responsibilities, including paying child support, also lessens both the State's normally compelling interest in establishing the parentage of a minor child[3] and the child's own interest in an accurate determination of paternity.[4] This is particularly so where, as here, the putative father not only denies paternity but also states unequivocally that he wants nothing to do with the child even if he is the biological father.

■ Although the trial court ultimately determined that it was not in the child's best interest to pursue the paternity allegations, the disruption of the parent-child relationship and potential detrimental effect and psychological impact on both the child and the presumptive father were such that the risk of erroneous deprivation of the privacy interests was significantly heightened. Child development experts stress the importance of stability and predictability in parent-child relationships even where the parent figure is not the natural parent. *McDaniels v. Carlson*, 108 Wn.2d 299, 310, 738 P.2d 254 (1987). Given the nature of the respective interests of the parties and the State in this particular case, and the risks inherent in meddling with the status quo in these circumstances, we hold that the trial court should have conducted a full evidentiary hearing prior to ordering a blood test of the putative father after the presumptive father requested such a hearing.

---

[3]*State v. Meacham*, 93 Wn.2d 735, 737-38, 612 P.2d 795 (1980).

[4]*State v. Santos*, 104 Wn.2d 142, 148, 702 P.2d 1179, 70 A.L.R.4th 1021 (1985).

## III

Mr. T also contends that the trial court erred in denying his motion to strike the paternity allegations as time barred by RCW 26.26.060(1)(b). Mr. T concedes that this issue is moot because the paternity claim was subsequently dismissed on other grounds. He nevertheless contends that it, too, is an issue of substantial public importance and capable of evading review. Again, we are not in a position to grant effective relief except to the extent that an error by the trial court in failing to dismiss the paternity claim at this earlier stage could affect the attorney fees issue.

RCW 26.26.060(1)(a) provides in pertinent part:

> A child, a child's natural mother, a man alleged or alleging himself to be the father, . . . or any interested party may bring an action *at any time* for the purpose of declaring the existence or nonexistence of the father and child relationship.

(Italics ours.) However, where presumptive paternity has been established pursuant to RCW 26.26.040, a special rule applies:

> A man presumed to be a child's father under RCW 26.26-.040 may bring an action for the purpose of declaring the nonexistence of the father and child relationship only if the action is brought *within a reasonable time* after obtaining knowledge of relevant facts. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party.

(Italics ours.) RCW 26.26.060(1)(b). In considering Mr. T's motion below, the trial court applied RCW 26.26.060(1)(b) at Mr. T's urging and denied the motion because "1 year or 1 year 7 months is not an unreasonable length of time within which to file a paternity action."[5] The trial court should not have relied on subsection (b) since this is an action brought

---

[5]Washington courts have held that periods of time greater than 3 years are reasonable. *See, e.g., Miller*, 97 Wn.2d at 447 (holding that although the child was 13 years old at the time of the paternity action, the trial court should have gauged the reasonableness of the time period by considering the period between the time the Uniform Parentage Act was enacted and the date the action was brought, a period of approximately 3 years); *accord, McDaniels*, 108 Wn.2d at 302 (paternity action brought more than 3 years after conception and after dissolution of the marriage).

by the mother to which, by its terms, subsection (a) applies. Subsection (a) explicitly provides that a mother may bring an action to declare the existence or nonexistence of a father and child relationship at any time. Thus, had the trial court decided the motion under the correct section of the statute, it would have been justified in denying the motion to dismiss the paternity claims as time barred without even considering whether the action had been brought within a reasonable time.[6] Because the trial court would have been required to deny the motion even if it had applied subsection (a), any error in failing to dismiss the paternity claim under subsection (b) did not increase the attorney fees Mr. T would have had to incur in defending this action below.

Reversed and remanded with instructions to the trial court to determine whether attorney fees are due Mr. T under RCW 26.26.140.

GROSSE and FORREST, JJ., concur.

---

[6]Mr. T also argues that a reading of the statute which requires a presumptive father to bring an action to disestablish his paternity as the presumptive father within a reasonable time, but permits a mother to bring such an action at any time, violates article 31, section 1 of the Washington State Constitution, as well as the equal protection clause of the United States Constitution. This issue, however, is not Mr. T's to raise, since here the trial court, albeit incorrectly, did consider the question of whether the action had been brought within a reasonable length of time under RCW 26.26.060(1)(b).